469 A.2d 1104

**COMMONWEALTH of Pennsylvania**

v.

**Jerry Lee SMITH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1983.

Filed Dec. 2, 1983.

Petition for Allowance of Appeal Denied April 3, 1984.

Blake E. Dunbar, Jr., Norristown, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Com., appellee.

Before CAVANAUGH, MONTEMURO and HESTER, JJ.

HESTER, Judge:

On February 19, 1981, appellant, Jerry Lee Smith, and his co-conspirator, Brenda Meinkrantz, departed Knob Noster, Missouri by automobile for Schwenksville, Montgomery County, Pennsylvania for the purpose of unlawfully removing money from the apartment of eighty-year-old Martha Thomas. The co-conspirators arrived in Montgomery County the next day and checked into a motel. Late in the evening of February 20, 1981, Meinkrantz drove appellant to the victim's apartment and left him.

A few hours later, on February 21, 1981, Meinkrantz returned to the victim's apartment, met appellant and assisted him by carrying a tan overnight-bag which he had handed her. The co-conspirators promptly departed the apartment, drove to the Pennsylvania Turnpike and counted $700.00 in stolen cash inside the overnight bag. Later that day, the victim's body was discovered by law enforcement officials in her master bedroom. A post-mortem operation revealed that she had died of manual strangulation.

Appellant was apprehended approximately one month later and charged with murder, voluntary manslaughter, involuntary manslaughter, aggravated assault, recklessly endangering another person, robbery, theft by unlawful taking, receiving stolen property, burglary and criminal con-

spiracy. On September 11, 1981, during the selection of the jury, appellant entered a plea of guilty to the charges of second-degree murder, criminal conspiracy and burglary in return for a recommendation from the prosecution for a life sentence on second-degree murder and suspended sentences on criminal conspiracy and burglary. Remaining charges were nol prossed. Appellant was also sentenced on September 11, 1981.

On October 27, 1981, appellant filed a motion to challenge his guilty plea nunc pro tunc on the alleged grounds that he was not mentally competent to enter his plea nor was he mentally competent to understand his right to challenge his guilty plea within ten days following sentencing. Appellant's trial counsel withdrew from the case on November 12, 1981, and newly-appointed counsel filed an amended motion to challenge the guilty plea nunc pro tunc. This amended motion included the additional allegations of a defective guilty plea colloquy and ineffectiveness of counsel during the colloquy and for a period of time in excess of ten days thereafter.

On January 12, 1982, a hearing was conducted for the sole purpose of determining whether appellant was competent following the entry of his guilty plea. This hearing was necessary to further determine whether he knowingly, voluntarily and intelligently chose not to challenge his guilty plea within the ten-day period prescribed by Pa.R. Crim.P. No. 321. Following the hearing, the lower court found appellant to be competent for the ten-day period commencing with the day of the guilty plea and sentencing. It also found appellant's counsel to be effective and the plea voluntarily entered. This appeal was filed from that Order of Court, dated January 12, 1982.

Appellant argues first that the lower court erred in finding him legally competent for the ten-day period immediately following the guilty plea colloquy and sentencing on September 11, 1981. At the January 12th hearing, appellant attempted to demonstrate through the testimony of Dr. Paul A. Grayce, a board certified psychiatrist at Norristown

State Hospital, that he was so emotionally distraught that he could neither process information nor make responsible decisions for a significant period following the entry of his plea. Dr. Grayce administered therapy to appellant on three occasions between September 14 and September 21, 1981. Conversely, appellant's trial counsel and former mother-in-law, both of whom visited with and counseled appellant immediately following his plea, testified that despite his severe distress, appellant was coherent and responding rationally to their comments and advice.

A defendant is mentally competent to enter a plea of guilty providing he had the opportunity at the appropriate time to consult with counsel, understand counsel's advice and information and understand the nature of the pending criminal proceedings against him. *Commonwealth v. Scott*, 271 Pa.Super. 545, 414 A.2d 388 (1979); *Commonwealth v. Marshall*, 454 Pa. 413, 312 A.2d 6 (1973). Although this rule is commonly applied to determine whether a defendant knowingly, voluntarily and intelligently entered a plea of guilty, it can also apply to the defendant's course of action in choosing or not choosing to challenge his guilty plea.

Dr. Grayce treated appellant and administered therapy for him on September 14, 15 and 21, 1981, consuming four hours. Although he actually saw appellant on a daily basis throughout the ten-day period within which the motion to challenge the plea could be filed, most of these were brief moments not set aside for evaluation, treatment or therapy. We note that Dr. Grayce and other members of his forensic team were of the opinion that appellant was afflicted with a borderline personality disorder causing instability in his emotions, relationships with others and perception of himself. Furthermore, he was subjected to rapid mood changes which bring either suicidal-type depression or baseless elation. More importantly, Dr. Grayce opined that these disorders precluded appellant from understanding his legal status and making the proper decision.

The Commonwealth first responded with the testimony of appellant's trial counsel. On September 12, 1981, the day following the guilty plea colloquy, counsel visited appellant for forty-five minutes and discussed his pardon rights, appeal rights and the ten-day period within which the motion to challenge the guilty plea must be filed. Furthermore, he reiterated the three bases for challenging the plea. At that time, according to trial counsel, appellant did not want to challenge the plea. Trial counsel further observed that appellant was "very distraught"; however, this did not prevent him from understanding his legal rights and contributing to a meaningful discussion.

Counsel also visited appellant the next day. Although he again discussed the guilty plea with him, most of the time involved a discussion between appellant and his family. Counsel was a passive participant. Counsel was of the opinion that appellant was more agitated that day than during any prior meeting, but that he again understood "the situation" and did not instruct counsel to file a motion to challenge the plea.

On September 16, 1981, counsel was instructed by Dr. Grayce that he found appellant not competent to exercise his rights with respect to challenging the guilty plea. With this in mind, counsel visited appellant the next day for the sole purpose of discussing his procedural rights. Appellant remained upset, but counsel still believed he understood his rights. Appellant again expressed his desire not to challenge the plea.

On October 16, 1981, following the running of the ten-day period within which to challenge the plea, appellant instructed his counsel for the first time that he wished to challenge his plea nunc pro tunc. Counsel prepared that motion and also his motion to withdraw.

The Commonwealth also presented the testimony of Margaret Farris, appellant's former mother-in-law. She had known appellant for twelve or thirteen years. She spoke with him on the day he entered the guilty plea and the following day in the Norristown State Hospital. She too

noted appellant's severe depression. She encouraged appellant to improve his character in the hope of gaining an early parole. Similarly, she found no deficiency in appellant's capacity to comprehend and communicate.

We recognize the conflicting testimony of appellant's expert and the Commonwealth's two lay witnesses concerning the issue of competency. The lower court evaluated the testimony of the three witnesses and concluded that appellant did not carry his burden of proving his lack of competency. A reviewing court is bound by the lower court's determination of issues of credibility, unless said determination is a manifest error. *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa.Super. 418, 307 A.2d 449 (1973). Issues of credibility are resolved through personal observation; therefore, absent clear and manifest error, a lower court's assessment of witnesses' integrity is not properly reversed on appeal. *Shacreaw v. Shacreaw,* 248 Pa.Super. 223, 375 A.2d 68 (1977); *Re Estate of Duncan,* 426 Pa. 283, 232 A.2d 717 (1967). Although Dr. Grayce qualified as an expert witness on the issue of competency, the lay testimony of appellant's trial counsel and former mother-in-law is not necessarily less credible. Testimony of lay witnesses may be sufficient to establish the competency of the accused. See *Commonwealth v. Zlatovich,* 440 Pa. 388, 269 A.2d 469 (1970). The issue was whether appellant could understand the legal and personal advice given him and make responsible decisions based thereon. *Scott,* supra; *Marshall,* supra. Trial counsel and Mrs. Farris were quite familiar with appellant. Counsel had met with him on forty or fifty occasions from the moment he was retained, while Mrs. Farris had known appellant for thirteen or fourteen years. Obviously, both were in a position to detect changes in appellant's behavior that would denote an inability to comprehend. Moreover, counsel spent at least the same amount of time counseling appellant immediately following his plea as Dr. Grayce had devoted to treatment and therapy.

■ Obviously, Dr. Grayce was qualified to diagnose appellant's mental condition and form an opinion of appellant's ability to comprehend and communicate. Although counsel and Mrs. Farris could not diagnose appellant's condition and implement the appropriate psychiatric therapy and treatment, they were nevertheless closely acquainted with appellant and qualified on that basis to attest to his capacity to understand his legal situation and constructively consult with his attorney. As a result, there was a basis for the lower court's refusal to elevate Dr. Grayce's testimony to a level that would justify finding appellant to have carried his burden of proof. Certainly, we will not find manifest error in the court's attribution of significant weight to the testimony of two laymen. The Commonwealth was not required to rebut Dr. Grayce's expert testimony with its own expert witness. Competency may be established through any source whatsoever. *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974).

Next, appellant argues that the lower court erred in not conducting a hearing at the time of his guilty plea for the purpose of determining his mental competence.

At the time that the court was inquiring into appellant's psychiatric history, the following dialogue occurred:

BY THE COURT:

Q. Mr. Smith, it seems to me that you are pretty upset at this point, and I'm a little reluctant to proceed further with this guilty plea, in light of your present condition.

A. Please, sir, let's go on.

Q. You wish to go on?

A. Yes.

MR. SPEERS: Can I just have one minute in back with him?

BY THE COURT:

Q. I want you to take a minute to compose yourself. I realize you are under some stress, but I want to be absolutely certain that you are making this decision voluntarily, intelligently and knowingly, as I have explained those terms.

A. Yes, sir.

Q. So, why don't you take a moment and go down and confer with Mr. Speers, and you can compose yourself a little bit further. Do you feel the need to do so?

A. No.

Q. You feel comfortable about going on?

A. Yes, sir.

Q. You are certain of that?

A. Yes, sir.

(N.T. September 11, 1981, pp. 11–12).

It is clear that appellant's nervous and anxious mental state alarmed the court. In addition to questioning appellant, the court sought information from appellant's counsel with respect to whether he received any psychiatric evaluation or treatment during the criminal proceedings. Appellant's counsel explained that two psychiatrists, with the assistance of a psychiatric clinic, evaluated appellant's neurological condition approximately one and one-half months prior to the guilty plea hearing. These physicians were of the opinion that appellant suffered from no organic ailment. Furthermore, a court-appointed psychiatrist, who participated with the others, opined in a telephone conference with counsel on the day of the guilty plea hearing that appellant remained competent at that time. Although this court-appointed psychiatrist had not seen appellant since early August, he was in receipt of a recent report from a therapist at Norristown State Hospital where appellant was detained. His opinion was based, therefore, on his earlier evaluation and the report of other experts. Equally important, was counsel's opinion, based upon his numerous meetings and conversations with appellant, that appellant was competent. In addition to this evidence, the court instructed appellant as follows:

BY THE COURT:

Q. Mr. Smith, let me explain to you that the test of competency is whether or not you can understand the charges against you, the nature of the proceedings, and whether you can cooperate with Mr. Speers, your counsel,

in making important decisions in regard to the defense of this matter. That's the test of competency. Do you feel that you are competent in that sense?

A. Yes. Yes, sir.

■ We are satisfied that the court's explanation of the competency test and its seeking from counsel both his opinion and the opinions of licensed psychiatrists who had evaluated appellant satisfied the necessity of determining appellant's competence. A hearing would have been superfluous.

■ It is also appellant's contention that certain defects in the colloquy rendered the guilty plea involuntary. Pennsylvania Rule of Criminal Procedure No. 321 requires a motion challenging the plea of guilty to be filed within ten (10) days following imposition of sentence. Only those issues raised in a motion challenging the plea can be considered on appeal. *Commonwealth v. Hunter*, 240 Pa.Super. 23, 360 A.2d 702 (1976); *Commonwealth v. Lee*, 460 Pa. 324, 333 A.2d 749 (1975). Having affirmed the lower court's finding of competence, and in recognition of appellant's failure to file a motion within ten days, we are compelled to find that appellant waived his appellate right to challenge any defects in the colloquy.

■ Finally, appellant argues that counsel was ineffective in failing to file a petition challenging the plea within the prescribed period of time. A post-sentence motion challenging a plea of guilty can raise just three issues: 1) whether the lower court possessed jurisdiction; 2) whether the plea was knowingly, voluntarily and intelligently entered; 3) whether counsel effectively represented the defendant. *Commonwealth v. Chumley*, 482 Pa. 626, 394 A.2d 497 (1978), cert. den. 440 U.S. 966, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979). According to appellant, counsel was ineffective for failing to challenge his plea on grounds that it was involuntarily entered. As discussed earlier, appellant was mentally competent to enter his plea. It cannot be gainsaid, therefore, that counsel's raising the incompetency

of appellant in a motion challenging the plea would be a fruitless effort. Ineffectiveness does not exist where counsel fails to raise meritless claims. *Commonwealth v. Webb,* 491 Pa. 329, 421 A.2d 161 (1980); *Commonwealth v. Tarver,* 491 Pa. 253, 420 A.2d 438 (1980).

There is a critical difference between pre-sentence and post-sentence attempts to withdraw a guilty plea. Attempts to withdraw a guilty plea following sentencing will prove successful only upon "a showing of prejudice on the order of manifest injustice." *Commonwealth v. Starr,* 450 Pa. 485, 490, 301 A.2d 592, 595 (1973); *Commonwealth v. Siers,* 318 Pa.Super. 215, 464 A.2d 1307 (1983); *Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982). Although lower courts have been reversed for failing to engage in an on-the-record explanation of the elements of the crimes charged, *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974); *Commonwealth v. Dilbeck,* 466 Pa. 543, 353 A.2d 824 (1976), said failure is not grounds for reversal where the defendant is apprised of the "nature of the charges." *Shaffer,* supra. In *Shaffer,* supra, the Pennsylvania Supreme Court considered the primary purpose of conducting an on-the-record colloquy as one insuring that the defendant entered his plea voluntarily and intelligently. To this end, the *Shaffer* court found the Commonwealth's presentation of its case far more effective than an explanation of the elements of the crimes.[1]

It is evident from the record that the trial judge was derelict in not reviewing the elements of the underlying crime of theft to the burglary charge; nevertheless, he engaged himself in a painstaking and thorough explanation of the elements of each crime to which appellant pled guilty (second degree murder, criminal conspiracy and burglary). Moreover, he referred to the underlying crime of theft and, most importantly, the Commonwealth reviewed the criminal behavior, including the act of theft, simply and completely. In particular, the Commonwealth reviewed appellant's and

1. In *Shaffer,* supra, a plea of guilty was entered subsequent to the presentation of the Commonwealth's case-in-chief.

co-defendant's plans to travel from Missouri to Montgomery County, Pennsylvania for the purpose of entering the victim's apartment and removing her money without authority. Thereafter, the co-conspirators' acts of checking into a nearby motel, remaining there for a few hours, driving to the victim's apartment, along with appellant's entry into the apartment and emerging a short time thereafter with $700.00 in cash were reviewed for the record. Following this summary of the facts, the court asked appellant whether he would acknowledge the Commonwealth's review as accurate:

Q. Mr. Smith, do you acknowledge what Mr. Williamson has stated as being a summary of the facts, as an accurate summary of the true facts of this case?

A. Basically.

Q. Basically? Do you have any fundamental disagreements with any of the significant portions?

A. Nope.

(N.T. September 11, 1980, p. 59).

With appellant deemed to be competent, we find that he understood the review, and his failure to deny any fact must be taken as genuine and intelligent. Also, the review was so complete as to assure that appellant pled knowingly, voluntarily and intelligently to the charge of burglary. Given the totality of the circumstances, the failure to define the elements of the crime of theft did not constitute manifest injustice. *Commonwealth v. Herberg*, 306 Pa.Super. 245, 452 A.2d 536 (1982); *Shaffer*, supra. As a result, counsel cannot be held ineffective for not encouraging appellant to challenge the plea on the lower court's failure to discuss the statutory elements of the underlying crime of theft. It would have been fruitless to pursue such a baseless claim. See *Webb*, supra; *Tarver*, supra.

▆ Similarly, we will not hold counsel ineffective for failing to file a motion challenging the plea on grounds that the court failed to review the nature and elements of the other charges and failed to advise appellant of the court's option not to honor the terms of the plea agreement. As

we alluded to with respect to the Commonwealth's summary of appellant's behavior amounting to the underlying crime of theft, the Commonwealth competently and with clarity capsulized the incidents justifying the charges of murder, burglary and criminal conspiracy.

■ Appellant is correct insofar as the court failed to note its power to disregard the terms of a plea agreement. Obviously, this would amount to a serious defect where the court, in fact, disregarded the agreement and imposed a sentence more severe than that bargained for. However, the lower court suspended sentence on the burglary and criminal conspiracy charges as per the agreement. The agreement also called for life sentence on the second-degree murder bill and the court's actual sentence was in conformity therewith. Appellant expected and was given the sentence imposed. Once again, we will not impose upon counsel the obligation of challenging a plea, under these circumstances, on the frivolous grounds that the nature and elements of all charges and the court's right to dishonor an agreement were not discussed. Counsel had a reasonable basis for not pursuing fruitless claims. See *Webb*, supra; *Tarver*, supra.

Order affirmed.