SMITH, Jerry Lee, Appellant,

v.

FREEMAN, Robert F., Superintendent; and the Attorney General of the State of Pennsylvania: Leroy Zimmerman and the District Attorney of Montgomery County.

No. 88–1925.

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 1989.

Decided Dec. 29, 1989.

Michael J. Kelly (argued), Defender Ass'n of Philadelphia, Federal Court Div., Philadelphia, Pa., for appellant.

James W. Steark (argued), Asst. Dist. Atty., Norristown, Pa., for appellees.

Before BECKER, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from an order of the district court denying appellant Jerry L. Smith ("Smith") a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). Because we conclude that Smith was not afforded a full and fair evidentiary hearing in state court on his claim that his guilty plea was involuntary due to mental incompetence, we will vacate the order of the district court denying the writ of habeas corpus and remand for further proceedings.

### I.

According to the prosecution, on February 19, 1981, Smith and his co-conspirator and ex-wife, Brenda Meinkrantz ("Meinkrantz"), drove from Missouri to Schwenksville, Montgomery County, Pennsylvania for the purpose of stealing money from the apartment of eighty-year-old Martha Thomas ("Thomas"). Late in the evening of February 20, after they checked into a local motel, Meinkrantz drove Smith to the apartment of Thomas and left him there.

A few hours later, Meinkrantz returned to Thomas' apartment, met Smith inside and helped him carry out a tan overnight bag. The bag contained $700 in stolen cash. Later that day, the body of Thomas was discovered in her bedroom by police. A post-mortem autopsy revealed that she had died of manual strangulation.

Smith was apprehended a month later and charged with numerous crimes in connection with this incident, including the murder of Thomas. On September 11, 1981, Smith entered a plea of guilty to the charges of second-degree murder, conspiracy and burglary in exchange for a recommendation from the prosecution that he be given a life sentence on the murder charge and suspended sentences on the conspiracy and burglary charges. All the remaining charges were *nol prossed*. Smith was thereafter sentenced to life imprisonment by Judge William T. Nicholas.[1] Since the defects present at the September 11 guilty plea colloquy between Judge Nicholas, Smith and Smith's court-appointed counsel, Thomas J. Speers ("Speers"), form the basis of Smith's current habeas claim, we discuss this colloquy in some detail.

Before accepting Smith's plea, Judge Nicholas ascertained that Smith was being held in Norristown State Hospital ("Norristown"), a psychiatric facility, had been committed there for two weeks prior to his decision to plead guilty, and received medication the night before. App. at 32–34. Smith told the court that this medication was to soothe his nerves and help him sleep, but that it did not affect his judgment. App. at 42. The court accepted Smith's characterization of his medication and sought neither its name nor any expert opinion as to its effects.[2]

---

1. After Smith's sentencing, Meinkrantz also negotiated a plea. Meinkrantz agreed to plead guilty to burglary and conspiracy to commit burglary for which she received a sentence of five to twenty years. In exchange, the prosecu-tion *nol prossed* the charges of murder and robbery.

2. In a subsequent hearing, one of Smith's treating physicians at Norristown, Dr. Paul A. Grayce, testified that Smith had been receiving

Smith also informed the court that he had experienced mental problems in the past, including a psychiatric episode while in the Air Force which resulted in discharge after a period of hospitalization. App. at 34–35, 37. At this point in the proceeding, Judge Nicholas, noting that Speers had been authorized to retain a psychiatrist, asked what that psychiatrist's opinion was as to Smith's competency. Speers represented to the court that the psychiatrist, Dr. Robert L. Sadoff, in consultation with two other specialists, had informed Speers by letter that it was their opinion that Smith was competent. App. at 38–39. In addition, Speers stated that he had spoken by telephone with Dr. Sadoff that very morning and that Dr. Sadoff had recently received "various reports from various agencies and other individuals who ha[d] examined" Smith. App. at 39–40. Speers told the court that, based on these contacts, Dr. Sadoff was *still* of the opinion that Smith was competent. *Id.*

As later revealed, Speers' representations to the court were false. Dr. Sadoff's August 17 letter stated, contrary to the representation of Speers, that it was his opinion that Smith "is not mentally competent to proceed at the present time." App. at 301.[3] Moreover, because Dr. Sadoff did not re-examine Smith during the interim, he could not have told Speers in a later telephone conversation that he was *still* of the opinion that Smith was competent. In order for Speers' representation to the court of Dr. Sadoff's opinion on the day of the guilty plea to be true, the doctor would have had to completely reverse his professional opinion in the space of less than a month with no basis appearing in the record for such an about face. Further-

more, in his letter to Speers, Dr. Sadoff referenced only one other psychologist, Dr. Gerald Cooke, whose psychiatric opinion he had sought. As actually reported by Dr. Sadoff to Speers, Dr. Cooke also diagnosed "Smith as borderline with a question about his competency." App. at 300.

Other facts lend credence to a strong inference that Speers misrepresented the contents of his telephone conversation with Dr. Sadoff on the day of the plea. Contrary to Speers' suggestion in court, the various "individuals who ha[d] examined" Smith up to this point appear to have had serious concerns about his mental health. Smith had been committed to Norristown because prison staff psychologists believed he was suicidal. App. at 108. Upon commitment, the hospital staff placed Smith on "suicidal precautions." App. at 110. While at Norristown, Smith was extremely disturbed, showed an inability to process information and manifested physical disturbances such as twitching movements. App. at 110–15.

As the testimony of Dr. Paul A. Grayce, one of Smith's treating physicians at Norristown, and Nancy Haines, a case worker at Norristown, established at Smith's later *nunc pro tunc* hearing, the mental health professionals in contact with Smith during the period immediately after his plea had grave doubts about his competency. Dr. Grayce testified that although Smith was not immediately diagnosed upon admission, his eventual diagnosis sometime after September 11 was that of a "border-line personality disorder." App. at 124. Dr. Grayce explained that this condition is marked by instability in mood, feeling and

"Vistaril" at the time, which is an "anti-anxiety agent."

**3.** In pertinent part the letter states:
Please refer to my previous letter of June 15, 1981 reflecting my initial examination of Mr. Smith on June 11, 1981. Since that time I have received the psychological testing report of Dr. Gerald Cooke dated July 1, 1981. In that report Dr. Cooke diagnoses Mr. Smith as borderline with a question about his competency.

. . . . .

Mr. Smith appears to be very fragile in his stability and will require further medication and treatment before he is sufficiently stabilized to withstand the rigors of trial for homicide. *For this reason I believe he is not mentally competent to proceed at the present time.* The two reasons given are that he is borderline in his stability and would likely decompensate under the stress of trial and also that he does not remember what had occurred and would not be able to cooperate effectively with counsel in preparing his defense.
App. at 300, 301 (emphasis added).

perception of oneself. *Id.* Under stress, persons with this disorder can rapidly "decompensate," and become psychotic and disorganized in their thinking. App. at 125. In addition, Dr. Grayce noted some marked dependency characteristics of Smith, as well as his "border-line personality disorder." Dr. Grayce stated that Smith tended to make decisions and responses based on "outside influences, which he perceives to be significant," e.g., "other people's opinions, comments and/or statements...." App. at 125–26, 208. Haines testified that, as of September 14, Smith appeared extremely anxious—"as though he were a frightened child"—and constantly repeated nonsense phrases in response to most questions. App. at 201–02.

However, without the benefit of Dr. Sadoff's true opinion, and also without the benefit of any other expert opinion as to Smith's competency, Judge Nicholas accepted the representation of Speers, as well as the statement of Smith himself, that he was competent. Thus, the court concluded that "[b]ased upon the colloquy with the defendant ... the Court finds that [Smith] has knowingly, intelligently, and voluntarily entered a plea of guilty to these three bills of information." App. at 86.[4]

Little more than a month later, on October 27, 1981, Smith filed a motion to challenge his guilty plea *nunc pro tunc* on the grounds that he had been incompetent both to enter his plea and to have understood his limited right under Pennsylvania law to challenge his guilty plea. *See* Pa.R.Crim.P. 321(a) (West Supp.1989).[5] Speers was allowed to withdraw from the case and a newly-appointed counsel, Blake Dunbar, filed an amended motion adding additional allegations. Those allegations included that the guilty plea colloquy was defective and that trial counsel was ineffective both during the colloquy and for a period in excess of ten days thereafter.

The amended motion was heard by Judge Nicholas, the same judge who took Smith's guilty plea. An evidentiary hearing was held, but only for the purpose of determining whether Smith was competent during the ten days following the entry of his plea. App. at 103–04, 226. Judge Nicholas reaffirmed his original finding of competency at the time of the guilty plea without hearing any evidence bearing on the competency of Smith at the time he pled guilty. His decision was based solely on his own recollection and the colloquy record. App. at 220–21, 230.

Although four witnesses were called at the hearing, none were permitted to testify as to Smith's competency at the time of his guilty plea. As to Smith's competency during the ten day period following his guilty plea, the only witnesses called by Smith were Dr. Grayce and Nancy Haines whose testimony has already been summarized. The prosecution called Speers who testified that he met with Smith during the ten days following the guilty plea and that Smith was competent and unwilling to challenge his plea despite appearing even more "distraught" than at the colloquy. App. at 154–55, 158–59, 163–64. The prosecution also called Meinkrantz's mother who testified that she spoke to Smith during the ten day period and he appeared rational, although upset and depressed. App. at 188–91.

Based on this testimony, the court gave greater credence to the testimony of

---

**4.** It bears noting that the court, in arriving at its conclusion, was not without obvious concern as to Smith's condition as well. The court observed several times that Smith was "wringing his hands" and "shaking his head" in a manner which indicated that he was very distraught. App. at 29–30. *See also* App. at 35, 47, 66. At one point the court stated that it was reluctant to proceed because the petitioner appeared too upset to continue. App. at 35 ("Mr. Smith, it seems to me that you are pretty upset at this point and I'm a little reluctant to proceed further with this guilty plea, in light of your

present condition."). At another point the court stated that Smith "is wringing his hands and ... keeping his eyes closed, and obviously endeavoring to keep himself under control." App. at 47.

**5.** Pa.R.Crim.P. 321(a) reads:

A motion challenging the validity of a guilty plea, or the denial of a motion to withdraw a guilty plea shall be in writing and shall be filed with the trial court within ten (10) days after imposition of sentence.

Speers [6] and Meinkrantz's mother [7], and found that Smith was competent during the ten day period after his guilty plea. App. at 220 ("I credit Mr. Speers' testimony as an officer of the Court and as a person who is specifically trained to make such determinations that the defendant was fully competent, understood his options, understood the advice."). Since Smith was found to have been competent both at the guilty plea stage and for ten days thereafter, the court found Speers to have been effective counsel who was simply unwilling to raise a frivolous incompetency claim.

Smith appealed to the Pennsylvania Superior Court from the denial of his motion. In a published opinion, the Superior Court affirmed the lower court's ruling denying his motion to withdraw the guilty plea *nunc pro tunc. Commonwealth v. Smith*, 322 Pa.Super. 504, 469 A.2d 1104 (1983). In particular, the Superior Court relied heavily on Speers' representations at the guilty plea colloquy in upholding Judge Nicholas' reaffirmation that Smith was competent at the plea stage:

> We are satisfied that the court's explanation of the competency test and its seeking from counsel both his opinion and the opinions of licensed psychiatrists who had evaluated [Smith] satisfied the necessity of determining [Smith's] competence [at the plea colloquy]. A [competency] hearing would have been superfluous.

*Id.* at 514, 469 A.2d 1104. A petition for allowance to appeal to the Pennsylvania Supreme Court was denied.

On May 16, 1985, Smith filed a motion under Pennsylvania's Post Conviction Hearing Act ("PCHA"), 42 Pa.Cons.Stat.

Ann. § 9541–9551 (Purdon 1982). Smith's petition was once again assigned to Judge Nicholas. In this motion, Smith repeated his competency claim. For the first time he combined the claim of incompetency to enter a plea with an ineffectiveness of counsel argument based on Speers' misrepresentations of Dr. Sadoff's psychiatric opinion, as well as subsequent failure of counsel to discover and raise the misrepresentation on appeal.[8]

Following argument by counsel, Judge Nicholas granted the Commonwealth's motion to dismiss the PCHA petition without an evidentiary hearing on the basis that Smith's claims had already been fully litigated. In reaching this result, Judge Nicholas pointed to his own finding after the *nunc pro tunc* hearing, and the Superior Court's affirmation of that finding, that Smith was competent to enter his guilty plea: "Simply stated, inasmuch as this court had earlier concluded that appellant was mentally competent to enter his guilty plea on September 11, 1981, which conclusion was affirmed by the Superior Court, this issue has been fully litigated." App. at 289.

Our review of the record reflects that no serious consideration was given to how the misrepresentations of Speers might have effected the court's original analysis that Smith was competent.[9] Instead, Judge Nicholas concluded that "this is a case where Smith has had his bite at the apple and a further [evidentiary] hearing would simply [be] a hearing that would be directed at issues that have been finally litigated." App. at 284.[10] The dismissal was

---

**6.** At this point the court still was unaware of Speers' earlier misrepresentations.

**7.** It should be noted that Smith now alleges that Meinkrantz's mother had an interest in seeing that he was found competent, i.e., her daughter had made a good plea bargain agreement with the state which might have been in jeopardy if Smith was found incompetent.

**8.** It was also alleged by Smith, for the first time, that his plea was coerced by means of a threat that his ex-wife, Meinkrantz, would receive the death penalty if petitioner did not plead guilty.

**9.** At oral argument, Judge Nicholas stressed repeatedly that: "I had absolutely no question then, or now, that the man knew exactly what he was doing when he entered his guilty plea. I made that finding. And nothing, it seems to me, has been suggested that contravenes that finding." App. at 273–74. *See also* App. at 277.

**10.** Smith's ineffectiveness of counsel claims were also dismissed because if Smith was competent at the time of the plea, counsel could not have been ineffective for not raising the issue, regardless of any misrepresentations. App. at 292.

affirmed in an unpublished memorandum opinion by the Pennsylvania Superior Court. App. at 297–99. Smith's petition for allowance of appeal to the Pennsylvania Supreme Court was denied on April 24, 1987.

Thereafter, Smith filed with the district court a *pro se* petition for a writ of habeas corpus. The petition alleged that Smith's guilty plea was involuntary due to his mental incompetency at the time of the plea. Smith also repeated his ineffective assistance of counsel claims. The case was assigned to a magistrate who issued a report recommending that the petition be denied. The district court adopted the magistrate's recommendation and denied the writ. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

## II.

■ We begin our analysis by examining the argument of the appellees that the failure of Smith to challenge his guilty plea within ten days of his plea of guilty, as required by Pa.R.Crim.P. 321(a), constitutes a procedural default under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See* Appellees' Brief at 9. Because we find that no state court has barred Smith's repeated challenges to his guilty plea because of a failure to comply with state procedural rules, the appellees' argument must be rejected.

*Wainwright v. Sykes* made clear that federal courts will not consider an issue of federal law in a habeas corpus proceeding if the underlying state court judgment rests on a state law ground that is both independent of the merits of the federal claim and an adequate basis for the court's decision. *Harris v. Reed*, — U.S. —, 109 S.Ct. 1038, 1042, 1043, 103 L.Ed.2d 308 (1989). This procedural default doctrine is not jurisdictional, but instead rests on principles of comity and federalism. *See, e.g., Murray v. Carrier*, 477 U.S. 478, 487, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). However, the doctrine does not bar consideration of a federal claim on habeas review unless the last state court rendering a

judgment in the case clearly and expressly states that its judgment rests on a procedural bar. *Harris*, 109 S.Ct. at 1043. *See also Wainwright v. Witt*, 469 U.S. 412, 431 n. 11, 105 S.Ct. 844, 855 n. 11, 83 L.Ed.2d 841 (1985); *Connecticut v. Johnson*, 460 U.S. 73, 80 n. 8, 103 S.Ct. 969, 973 n. 8, 74 L.Ed.2d 823 (1983) (plurality opinion); *Hochman v. Rafferty*, 831 F.2d 1199, 1203 (3d Cir.1987), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988). The logic of this rule is obvious since where "neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979).

None of the Pennsylvania courts which addressed the repeated challenges of Smith to his guilty plea indicated that his claim was barred by Rule 321(a). To the contrary, each court that addressed Smith's competency claim reached the merits. Judge Nicholas, in hearing Smith's *nunc pro tunc* motion, determined that he was bound under Pennsylvania law to reach the merits of Smith's claim of incompetency. *See* App. at 231, 327. As he later described his reasoning:

> [A]fter I read [*Commonwealth v.*] *Higgins*[, 492 Pa. 343, 424 A.2d 1222 (1980), *cert. denied*, 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981)], it became clear to me that you can never waive competency with respect to a Guilty plea. You can always raise the issue of mental incompetency, at the time of the plea. Always.
>
> So while it's true that the hearing of January 12th [on the *nunc pro tunc* motion] didn't focus on the issues of competency at the time of the original plea, I considered it. And in my Opinion I said that the record fully supports the Court's conclusion made and announced at the time of the original plea that he was competent to enter that plea. . . .

App. at 275–76.[11]

The Superior Court, in affirming the denial of Smith's *nunc pro tunc* motion, also reached the merits of the competency claim by reviewing Judge Nicholas' initial finding of fact on the issue. *Smith,* 322 Pa.Super. at 509–12, 469 A.2d 1104. The Superior Court concluded that: "We are satisfied that the court's explanation of the competency test and its seeking from counsel both his opinion and the opinions of licensed psychiatrists who had evaluated [Smith] satisfied the necessity of determining [Smith's] competence." *Id.* at 514, 469 A.2d 1104. The only claim found to be procedurally barred by Rule 321(a) was Smith's challenge to the adequacy of the plea colloquy itself, a claim which is not at issue in this habeas corpus proceeding. *Id.* The Pennsylvania Supreme Court declined to review Smith's claim.

Similarly, both the trial and appellate courts which heard Smith's PCHA petition dismissed it on the basis that it lacked merit, not because the claim was barred by Rule 321(a). Specifically, both courts relied on 42 Pa. Cons.Stat.Ann. § 9543(4) (Purdon 1982), which reads in relevant part: "To be eligible for relief under [PCHA] ... a person ... must prove ... (4) That the error resulting in his conviction and sentence has not been fully litigated...." Since both courts found that Smith's competency claim had been fully litigated in connection with his *nunc pro tunc* motion, the claim was summarily dismissed. *Cf. Hochman,* 831 F.2d at 1203 (New Jersey petitioner's claim was not procedurally barred in federal court where both state trial and appellate courts reached the merits, and the claim was dismissed in state post conviction proceedings because of those prior adjudications on the merits).

In sum, no Pennsylvania court, at any level, relied on Rule 321(a) to bar Smith from litigating his competency claim. Under the principles of *Harris,* we are not bound to enforce a state procedural rule when the state itself has not done so, even if the procedural rule is theoretically applicable to our facts. *See Harris,* 109 S.Ct. at 1045; *United States v. Frady,* 456 U.S. 152, 177, 102 S.Ct. 1584, 1599, 71 L.Ed.2d 816 (1982) (Blackmun, J., concurring in the judgment) ("The Court has long recognized that the *Wainwright v. Sykes* standard need not be met where a state has declined to enforce its own ... rule"); *Hochman,* 831 F.2d at 1202–03. Therefore, we turn to address the substance of Smith's argument on appeal.[12]

### III.

The gravamen of Smith's habeas corpus action is that the state courts failed to adequately examine the issue of whether he was mentally competent at the time he entered his plea of guilty to the murder of Martha Thomas. Because of the defects in the state court proceedings, Smith contends that he is entitled to an evidentiary hearing in federal court on the issue of whether his plea was voluntary. The district court found no defects in the state proceedings and denied the writ without holding an evidentiary hearing. Presuming that the findings of competency of the state courts were correct, the district court concluded that on the basis of the state court record, Smith "was sufficiently rational to understand the facts and consequences of the

---

11. Whether Judge Nicholas correctly interpreted the holding of *Higgins* is an issue we need not decide.

12. We have grave doubts whether the appellees' have not also waived their procedural default argument by not explicitly raising it in the district court. Appellate courts have the discretion to find that such arguments are waived if not raised below. *See Engle v. Isaac,* 456 U.S. 107, 124 n. 26, 102 S.Ct. 1558, 1570 n. 26, 71 L.Ed.2d 783 (1982); *Estelle v. Smith,* 451 U.S. 454, 468 n. 12, 101 S.Ct. 1866, 1876 n. 12, 68 L.Ed.2d 359 (1981) (affirming the appellate court's finding of waiver); *Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980); *Batchelor v. Culp,* 693 F.2d 859, 863–64 (9th Cir.1982), *cert. denied,* 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983); *Gray v. Lucas,* 677 F.2d 1086, 1108 n. 19 (5th Cir.1982), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983). *Cf. Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987) (holding that appellate courts have the discretion to find that the state has waived its nonexhaustion argument if it does not raise such an argument in the district court).

legal proceedings and to understand and consult with his attorney to meet the legal standard of competency to enter a voluntary plea." App. at 317.

 A district court decision denying a petition for a writ of habeas corpus is generally reviewed *de novo*. *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989); *Toomey v. Clark*, 876 F.2d 1433, 1435 (9th Cir.1989); *Hopkinson v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir.1989). *Cf. Sullivan v. Cuyler*, 723 F.2d 1077, 1082 (3d Cir.1983) (appellate review of habeas corpus petitioner's contentions "which implicate the interpretation and application of legal precepts is plenary"). When the district court has denied a petition without holding an evidentiary hearing our review consists of a two-step analysis. *Toomey*, 876 F.2d at 1435. We must first determine whether Smith has alleged facts that, if proved, would entitle him to relief. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Toomey*, 876 F.2d at 1435. And, if so, we must then decide whether an evidentiary hearing is necessary to establish the truth of those allegations. *Townsend*, 372 U.S. at 312–19, 83 S.Ct. at 756–60; *Toomey*, 876 F.2d at 1435.

Taking the factual assertions of Smith in the light most favorable to him, *see Keller v. Petsock*, 853 F.2d 1122, 1128 (3d Cir. 1988), it is clear that if his allegations are proved, he will have established a violation of his constitutional rights. The entry of a guilty plea necessarily involves the waiver of certain constitutional rights. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969); *United States v. Cole*, 813 F.2d 43, 46 (3d Cir.1987). Such a waiver is valid under the due process clause only if it constitutes an intentional relinquishment or abandonment of a known right or privilege. *McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1170. In other words, a defendant's plea must be both intelligent and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). It is axiomatic that a mentally incompetent defendant cannot enter an intelligent and voluntary guilty plea. *See, e.g., Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) ("the test [for determining a defendant's competency] must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him").

Since the allegations of Smith, if true, would establish a cognizable claim under 28 U.S.C. § 2254, we now turn to determine whether the district court erred in not affording Smith an evidentiary hearing. The standard we apply is a familiar one: "Where the facts are in dispute, the federal court in habeas corpus [proceedings] must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." *Townsend*, 372 U.S. at 312, 83 S.Ct. at 756. *See also Bibby v. Tard*, 741 F.2d 26, 30 (3d Cir.1984); *United States ex rel. Choice v. Brierly*, 460 F.2d 68, 73 (3d Cir.1972); *Rock v. Zimmerman*, 543 F.Supp. 179, 195 n. 15 (M.D.Pa.1982). A habeas corpus petitioner is denied a full and fair hearing when:

(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend*, 372 U.S. at 313, 83 S.Ct. at 757.

 We find that "evidence crucial to the adequate consideration of [Smith's] constitutional claim was not developed at the state hearing." *Townsend*, 372 U.S. at 317, 83 S.Ct. at 759. *See also* 28 U.S.C.

§ 2254(d)(3) (1982).[13] Moreover, we also find that such inadequate factual development was not due to the "inexcusable neglect" of Smith, and thus a federal hearing on the issue of competency is compelled. *Townsend*, 372 U.S. at 317, 83 S.Ct. at 759.

Our focus is on the record of the guilty plea colloquy since this was the only state hearing which dealt specifically with the issue of Smith's competency at the time of his plea. Although subsequent state findings as to Smith's competency at the time of his plea were made, these findings were always based solely on the record of the guilty plea colloquy.[14] No other factual development on this issue was made in any of the various other state proceedings instituted by Smith. For example, the evidentiary hearing held in connection with Smith's *nunc pro tunc* motion was expressly limited to the issue of whether Smith was competent during the ten days *after* his plea. No factual development was made as to his competency at the time of the plea. All attempts by counsel to probe the issue of competency at the time of the plea were blocked by the court. *E.g.*, App. at 173–74. Similarly, the brief oral argument held during Smith's PCHA proceeding—before his petition was summarily dismissed—was limited to the question of whether Smith's competency claim had already been litigated and, if so, whether Smith's new ineffective assistance of counsel argument was a surreptitious attempt to relitigate it. No evidentiary hearing, and thus no further factual development, was held on the merits of the claim during the PCHA proceedings.

Turning then to the guilty plea colloquy, it is beyond cavil that important and substantial evidence material to Smith's mental competency was not developed during the course of that hearing. Indeed, one of the most crucial facts, i.e., the opinion of the court-authorized psychiatrist, was clearly misrepresented to the court. Contrary to the statement in court of Smith's defense counsel, as of a month before the plea of guilty Dr. Sadoff's opinion was that Smith was mentally incompetent.[15] In addition, contrary to the representations of Speers to the court, the psychologist on whose report Dr. Sadoff relied also questioned Smith's competency.

Other material facts were also not developed at the guilty plea colloquy. They include such matters as the basis for Dr. Sadoff's opinion that Smith was incompetent, the opinion of Dr. Cooke who examined Smith and on whose report Dr. Sadoff

---

**13.** The exact relationship between *Townsend* and the § 2254(d) exceptions is still a murky one. *See, e.g., Rock v. Zimmerman*, 543 F.Supp. 179, 195 n. 15 (1982). Because our analysis establishes that both *Townsend*'s category (5) and § 2254(d)(3) are satisfied by the facts of this case, we need not get involved in this interesting debate.

In addition, our finding today that *Townsend*'s category (5) and § 2254(d)(3) are applicable to this case is not meant to preclude the possibility that other *Townsend* categories, or § 2254(d) exceptions, might be applicable as well. While Judge Becker joins fully in this opinion, he believes that the case is best analyzed as falling under § 2254(d)(6), because in his view the central problem is that, by reasons of Speers' misrepresentations and the court's reaction thereto, Smith was deprived of a full, fair and adequate hearing.

**14.** Of course, we are not holding that the findings of the trial and appellate courts which reviewed Smith's claims do not fall within the purview of 28 U.S.C. § 2254(d). *See Sumner v. Mata*, 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). Rather we assume that

they do and hold that the factual development underlying these findings was inadequate. *Townsend*, 372 U.S. at 313, 83 S.Ct. at 757; 28 U.S.C. § 2254(d)(3) (1982).

**15.** In our view, such a gross and fundamental error in Speers' representation of Smith's interests must unfavorably color his credibility as to other assertions he made relating to his client's competency. In particular, Speers' assertion that he had spoken to Dr. Sadoff the very day of the plea and that the doctor, as well as other treating professionals, were still of the opinion that Smith was competent becomes suspect. This is especially true in light of the later *nunc pro tunc* testimony of Norristown mental health professionals that Smith's treating team had serious concerns about Smith's mental competency during the ten days after his plea.

It should be noted that we are not challenging any credibility findings by Judge Nicholas. *See Maggio v. Fulford*, 462 U.S. 111, 113, 103 S.Ct. 2261, 2262, 76 L.Ed.2d 794 (1983). The only credibility finding made by Judge Nicholas was at the *nunc pro tunc* hearing, which was *before* the court knew of Speers' misrepresentations.

relied in forming his own opinion, the opinion of the Norristown treating team as to Smith's competency *at the time of the plea*, the admitting diagnosis at Norristown that Smith was suicidal, and the identity, physical effect and purpose of medication taken by Smith at the time. As the Supreme Court has noted, evidence establishing a defendant's irrational behavior and any prior medical opinion on competency is relevant to a trial court's determination of whether or not further judicial inquiry into the defendant's competency is required. *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975). Clearly, the more material facts that were left undeveloped, the less confident one can be in the conclusion emanating from this guilty plea colloquy.

The objectively inadequate factual development that occurred during the plea colloquy was the result of Speers' misrepresentations which, in the absence of information casting doubt upon them, were entitled to acceptance by Judge Nicholas. However, we are confident that, despite Judge Nicholas' statements to the contrary four years later, had the true contents of Dr. Sadoff's letter, as well as the opinions of Smith's Norristown treating team been revealed to the court by responsible counsel during the plea colloquy, further inquiry into this issue would have been deemed appropriate. *Cf. Smith,* 322 Pa.Super. at 514, 469 A.2d 1104 (in later reviewing and affirming Judge Nicholas' decision not to hold a competency hearing, the Superior Court stressed that it was sufficient that he sought from Speers both his own opinion that Smith was competent, and the opinions of licensed psychiatrists who had examined Smith). Judge Nicholas was already alarmed by Smith's nervous and anxious mental state, *id.* at 513, 469 A.2d 1104, was aware of Smith's prior history of mental difficulties and that Smith was currently hospitalized in a psychiatric facility and receiving medication. Add to this troubling mix both Dr. Sadoff's real opinion as of a month before the plea as well as Smith's admitting diagnosis, and further inquiry would certainly have been warranted. *See Pate v. Robinson,* 383 U.S. 375,

385–87, 86 S.Ct. 836, 842–43, 15 L.Ed.2d 815 (1966). *Cf. United States ex rel. Trantino v. Hatrack,* 563 F.2d 86, 92–93 (3d Cir.1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978) (no competency hearing indicated when *no* psychiatrist expressed doubts as to petitioner's competency, petitioner's counsel expressed no worries and the petitioner exhibited "impressive demeanor and extensive vocabulary"). But since no further inquiry was conducted by Judge Nicholas, and since all subsequent findings that Smith was competent were based on the record of the guilty plea colloquy, all of the subsequent state findings necessarily suffer from the same *Townsend* defect.

Moreover, under the facts of this case we will not attribute to Smith the neglect of his court-appointed counsel in failing to ascertain, utilize and communicate the substantial and persuasive psychiatric opinion so as to bar him from an evidentiary hearing. It would be manifestly unjust to require Smith, assuming *arguendo* the truth of his incompetency claim, to overcome his counsel's deficiencies and himself provide the court with the undeveloped facts. We hold, therefore, that any neglect, *vis-a-vis* Smith, was excusable. *Cf. Townsend,* 372 U.S. at 317, 83 S.Ct. at 759 ("if for some justifiable reason [the petitioner] was previously unable to assert his rights or was unaware of the significance of the relevant facts" a hearing should be held); *Streetman v. Lynaugh,* 812 F.2d 950, 960 (5th Cir.1987) ("[i]t is well established that counsel's failure to marshall crucial evidence underlying a federal claim because of insufficient preparation or other neglect does not constitute a deliberate bypass" for *Townsend* purposes); *Guice v. Fortenberry,* 661 F.2d 496, 507 (5th Cir.1981) (where defendants and their attorneys did not appreciate fully the relevance of the undeveloped evidence, neglect was excusable).

It is clear to us that Smith has alleged more than enough to merit further factfinding, *cf. United States ex rel. McNair v. New Jersey,* 492 F.2d 1307, 1309 (3d Cir. 1974) ("an evidentiary hearing is an *a fortiori* proposition if the state record is defi-

cient in critical areas"); *Keller*, 853 F.2d at 1124, 1128–29 (petitioner's "bald factual assertions" that tipstaff told jurors that they could not communicate with the judge and that several jurors failed to understand the polling procedures were sufficient to require federal fact-finding on petitioner's due process claim, at least where no findings had been made by the state courts), and that the district court erred in not holding an evidentiary hearing. In so holding, we recognize that whether a person is competent to enter a plea is a question of fact, *Maggio v. Fulford*, 462 U.S. 111, 113, 117, 103 S.Ct. 2261, 2262, 2264, 76 L.Ed.2d 794 (1983), and that such factual determinations made by a state court are usually given a presumption of correctness by a habeas court. *See Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d) (1982). However, given our analysis today, on remand the district court should not presume Smith was competent at the time of his plea. 28 U.S.C. § 2254(d)(3) (1982). Instead, the district court should determine, after hearing the proofs, whether Smith has satisfied his burden of showing by a preponderance of the evidence that his conviction was unconstitutional. *See, e.g., Smith v. White*, 815 F.2d 1401, 1406 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). We believe that Smith should be afforded a fair hearing so that a full factual development on the issue of his competency can ensue.[16]

## IV.

In summary, we hold that Smith's habeas corpus claim is not procedurally barred by Rule 321(a) because no Pennsylvania court barred Smith's claim on that ground. We also hold that the district court erred in not affording Smith an evidentiary hearing on his competency claim. The state court hearings on this issue were not full and fair under the principles of *Townsend*. We

will vacate the order of the district court and remand the matter for further proceedings consistent with this opinion.

---

**16.** We remand to the district court instead of the state court for fact finding under the authority of *Townsend*, 372 U.S. at 312–13, 83 S.Ct. at 756–57, and *Keller*, 853 F.2d at 1129–30. Judge Weis would direct the district court to grant the writ unless within ninety (90) days the state conducts an evidentiary hearing on all aspects of the petitioner's claim of incompetency at the time he entered his guilty plea. *See United States ex rel. McGough v. Hewitt*, 528 F.2d 339, 344 (3d Cir.1975).