J-S68042-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ASHLEY MARIE BARBER | : | |
| | : | |
| Appellant | : | No. 839 WDA 2018 |

Appeal from the PCRA Order May 7, 2018
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000573-2012

BEFORE: SHOGAN, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: FILED DECEMBER 27, 2018

Appellant, Ashley Marie Barber, appeals from the order entered in the Court of Common Pleas of Crawford County dismissing her first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546. We affirm.

The PCRA court aptly sets forth the pertinent facts and procedural history, as follows:

> Defendant/Petitioner [hereinafter "Appellant"] pled guilty, along with her co-defendant Jade Olmstead, to the first-degree murder of Brandy Stevens.
>
> To put the matter in context, the following is a summary of the facts Appellant admitted in her plea colloquy. Appellant admitted that Olmstead and she had a plan to lure Stevens into the woods to fight her. After the physical altercation began, the plan became to kill her. The fight started with Appellant hitting Stevens in the face and throat with her fists and hands. Stevens began fighting back and screaming for help. Appellant held Stevens while Olmstead struck her multiple times in the head with a shovel.

_____
* Former Justice specially assigned to the Superior Court.

Petitioner beat Stevens' forehead off a tree stump until she could see visible blood and brain material. Appellant used a rope that had been on the tree stump to first hold and then to strangle Stevens. When Stevens stopped fighting back, Appellant stated that her "anger wasn't done" and it was frustrating to her that Stevens was no longer fighting so Appellant dropped a boulder from over her head onto Stevens' face. Appellant then poured water into Stevens' mouth to drown her. Appellant and Olmstead put Stevens in a shallow grave they dug in the ground and covered her face and body with dirt.

Appellant was sentenced to a term of life imprisonment after her guilty plea on November 14, 2013. Appellant filed a pro se Motion for Post Conviction Collateral Relief on November 5, 2014. Appellant was appointed PCRA counsel and counsel filed an Amended Petition for PCRA relief on February 20, 2015. The court heard argument on the Amended Petition on May 4, 2015 and an evidentiary hearing was held on October 26, 2017. The court ordered briefs to be filed within 45 days. Upon motion of the Appellant, the court extended time for filing, and both the Commonwealth's and the Appellant's briefs were timely submitted by January 11, 2018.

Appellant assert[ed] essentially two reasons for relief under the PCRA: 1) that her guilty plea was unlawfully induced and thus not knowing, voluntary, and intelligent; and 2) ineffective assistance of counsel [in inducing her to plead guilty when she was incompetent to do so]. The two issues [as presented] dovetail[ed] as Pennsylvania law sets forth that a criminal defendant has the right to effective assistance of counsel during a plea process as well as during trial. [After thorough review of both issues, the PCRA court denied Appellant relief by order dated May 7, 2018].

PCRA Court Opinion, 5/7/18, at 1-2.

Appellant presents the following question for our consideration:

[Did] the PCRA court err[ ] in denying Appellant's Amended Petition for Post-Conviction Collateral Relief where the Appellant contends (1) Appellant did not knowingly, voluntarily, and intelligently enter her plea based upon a totality of circumstances; (2) Appellant testified regarding the ineffective assistance of counsel concerning the entry of [her] guilty plea; and (3) the PCRA court failed to permit testimony from a psychiatrist regarding her

- 2 -

past mental health history and mental status at the time of entry of Appellant's guilty plea?

Appellant's brief, at 3.

We begin with our standard of review governing PCRA appeals.

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is de novo and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

Commonwealth v. Benner, 147 A.3d 915, 919 (Pa.Super. 2016) (quoting Commonwealth v. Perry, 128 A.3d 1285, 1289 (Pa.Super. 2015)).

Appellant first raises a mental incompetence claim against her guilty plea. As a prefatory matter, we note that an appellant generally waives a challenge to the validity of his or her guilty plea if it is not first raised before the trial court and in a direct appeal. Commonwealth v. Lincoln, 72 A.3d 606, 609–610 (Pa.Super. 2013) ("[a] defendant wishing to challenge the [validity] of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing."); Pa.R.Crim.P. 720(A)(1), (B)(1)(a)(i). In the case sub judice, Appellant has not previously raised this challenge, hence, the general rule would call for waiver of this claim.

However, in Commonwealth v. Brown, 872 A.2d 1139 (Pa. 2005), the Pennsylvania Supreme Court held that "the failure to raise on direct appeal a claim that the appellant was incompetent at the time of trial does not constitute a waiver of that claim for purposes of the PCRA." Id. at 1155-56. In so doing, the Court acknowledged it has 'long held that 'the mental competence of an accused must be regarded as an absolute and basic condition of a fair trial[,]'" such that "when the issue presented is whether a person was competent to stand trial, the waiver rule is not applicable." Id. at 1155 (citations omitted). Among the PCHA cases upon which the Court relied in this regard was Commonwealth v. Giknis, 420 A.2d 419 (Pa. 1980), where the Court declined to find waiver where appellant asserted for the first time in his PCHA petition that he was incompetent to have entered a guilty plea. Brown, 872 A.2d at 1155. Observing that the relevant provisions defining waiver in both the PCHA and PCRA are nearly identical, the Brown Court declined to find waiver under the PCRA. On this authority, therefore, we determine Appellant has not waived her competence claim by failing to raise it previously before the trial court or on direct appeal.

In addressing Appellant's issue related to his guilty plea, we first set forth our well-settled standard of review.

> "Our law is clear that, to be valid, a guilty plea must be knowingly, voluntarily and intelligently entered." Commonwealth v. Pollard, 832 A.2d 517, 522 (Pa.Super. 2003). In Commonwealth v. Fluharty, [632 A.2d 312 (Pa.Super. 1993)], we set forth guidelines to determine the validity of a guilty plea:

- 4 -

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. [A] plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

Id. at 314 (quotation marks and citations omitted). Commonwealth v. Rush, 909 A.2d 805, 808 (Pa.Super. 2006).

"A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." Pollard, 832 A.2d at 523 (citation omitted). "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." Commonwealth v. Yeomans, 24 A.3d 1044, 1047 (Pa.Super. 2011) (citing Pollard, supra).

"[W]here the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." Commonwealth v. McCauley, 797 A.2d 920, 922 (Pa.Super. 2001).

Relatedly, the test for determining competence to enter a plea is whether the defendant "had the opportunity at the appropriate time to consult with counsel, understand counsel's advice and information and understand the

nature of the pending criminal proceedings against him." Commonwealth v. Smith, 469 A.2d 1104, 1107 (Pa.Super. 1983) (citing Commonwealth v. Scott, 414 A.2d 388 (Pa.Super. 1979), and Commonwealth v. Marshall, 318 A.2d 724 (Pa. 1974)). Since the determination of competency is a matter for the sound discretion of the lower court, we may not disturb that finding absent a clear abuse of that discretion. Commonwealth v. Frey, 904 A.2d 866, 872 (Pa. 2006).

The 167-page Notes of Testimony of Appellant's guilty plea colloquy belie the portrayal of an incompetent defendant struggling to communicate with counsel and understand the nature of criminal proceedings against her. In fact, throughout the lengthy colloquy, Appellant responded clearly and appropriately to the many questions put to her. While most of her responses consisted of short answers either in the affirmative or in negative, she provided them in a manner reflecting discernment and understanding of the questions. For example:

> THE COURT: [As to the written guilty plea colloquy] So it looks like your printing and both you and Mr. Draudt [defense counsel] signed it; is that true?
>
> APPELLANT: Yes.
>
> THE COURT: And did you sign it of your own free will?
>
> APPELLANT: Yes.
>
> THE COURT: Did anyone force you or threaten you to sign it?
>
> APPELLANT: No.

THE COURT:    Any questions for me about this form?

APPELLANT:    No, sir.

. . .

THE COURT:    You've had some mental health treatment including you've been institutionalized for at least one occasion for a short period of time; is that right?

APPELLANT:    Yes.

THE COURT:    And you've been on medication for a period of time off and on; is that right?

APPELLANT:    Yes.

THE COURT:    And are you on medication right now?

APPELLANT:    Yes.

THE COURT:    Are you taking that in the dosage and manner that the doctors and professionals have prescribed it to you in [sic]?

APPELLANT:    Yes.

THE COURT:    …[Y]ou're taking it when you're given it?

APPELLANT:    Yes.

THE COURT:    You're not cheeking it or not taking it or spitting it out or anything?

APPELLANT:    No.

THE COURT:    And you have been taking that regularly throughout your stay at the jail?

APPELLANT:    Most of the time.

THE COURT:    Okay.  Over the last month or so, have you been taking it regularly?

APPELLANT:      Yes.

. . .

THE COURT:      Is the medication helping you?

APPELLANT:      Yes.

THE COURT:      Okay.  Is the medication affecting your ability to understand me at all here today?

APPELLANT:      No.

THE COURT:      Are you currently under the influence of alcohol?

APPELLANT:      No.

THE COURT:      Drugs?

APPELLANT:      No.

THE COURT:      Controlled substances, other than the medication we've talked about?

APPELLANT:      No, sir.

THE COURT:      [Is] anything that you're aware of today having an impact on your ability to understand me?

APPELLANT:      No.

…

THE COURT:      Do you believe you are competent?

APPELLANT:      Yes.

THE COURT:      You understand all of the things we've talked about?

APPELLANT:      Yes.

THE COURT:      You understand your defenses, the rights you have to proceed to trial; you understand Mr. Draudt's role; you

understand Mr. Schultz's role; you understand my role; the various court staff's roles. Do you understand all of those things?

APPELLANT:     Yes.

THE COURT:     And do you believe you have been able to assist Mr. Draudt in his representation of you over the months that have been leading up to today?

APPELLANT:     Ninety percent of the time.

THE COURT:     Okay. So there have been some tough days maybe where you weren't feeling your best or you were a little down in the dumps or a lot down in the dumps, maybe or medication wise or mental health wise or, maybe, it's medically wise, you weren't able to give the information that you wanted. But for the majority of that time, you have been able to provide and assist in your own defense; is that true?

APPELLANT:     Yes.

THE COURT:     And especially, let's say, the last 30 to 60 days, have you been able to assist in your own defense?

APPELLANT:     Yes.

THE COURT:     ... [Y]our [sic] decision to enter the plea today has nothing to do with the fact that you've had some times where you weren't able to help. You're decision to enter the plea today is based upon the evidence and what you believe the evidence will show; is that true?

APPELLANT:     Yes.

. . .

THE COURT:     The printing [on the written guilty plea colloquy] is all yours. The part that's filled in by Mr. Draudt is the punishments and we'll talk a lot about the punishment in a little while, but you've signed that as well. You understood and read what he filled in?

APPELLANT:     Yes.

THE COURT: And he filled that in prior to you signing the form?

APPELLANT: Yes, we talked about it, that's why it is separate.

THE COURT: I bet you did. Okay. Any questions for me about that form?

APPELLANT: No, sir.

THE COURT: Okay, [I have discussed with defense counsel a recent Pennsylvania Supreme Court case of relevance] and directed or indicated he should look at the case. I assume that you've done that; is that true?

DEFENSE COUNSEL: Yes, sir.

THE COURT: And have you gone over that with Ms. Barber?

DEFENSE COUNSEL: Yes.

THE COURT: Okay. [It] is a complicated case. I'm not going to go through it now and bore everybody –

APPELLANT: I've read it.

THE COURT: --with it, but you understand what it means?

APPELLANT: Yes.

. . .

THE COURT: The defendant is alleged, you're the defendant here, you're alleged to have on or about May 24, 2012 with malice, premeditation with specific intent to kill, kill Brandy Stevens. Do you understand that?

APPELLANT: No, it was on May 17.

THE COURT: Okay. You're right. It was on May 17.

N.T. at 10, 12-14, 16-17, 18-19, 113.

Appellant also answered the Commonwealth's open-ended questions pertaining to the facts underlying the charges against her. Again, Appellant showed no sign of incompetence in this phase of the colloquy, as she clearly described the nature of her relationship with the co-defendant and gave a detailed account of relevant events occurring before, during, and after their brutal murder of the victim. N.T. at 118-161.

At the conclusion of the colloquy, Appellant pleaded guilty to murder in the first degree. N.T. at 162. She denied that either coercion or undisclosed promises induced her plea. N.T. at 163. She expressed satisfaction with plea counsel's assistance and denied he had failed to keep her informed or to carry out her requests. Id.

Appellant argues the PCRA court erroneously dismissed as incredible her PCRA testimony that she was mentally incapable at her plea colloquy of reliably claiming adherence to her medication regimen, comprehension of the proceeding and its consequences, and satisfaction with plea counsel's assistance. Appellant's brief, at 8-10; 11-14. Under governing standards set forth above, however, it was Appellant's burden to prove at the PCRA hearing that she was not, in fact, competent during her plea colloquy despite every appearance indicating otherwise. See Pollard, supra.

Appellant's self-conflicting PCRA testimony failed to meet this burden, as she claimed at one instance an incapacity to understand the plea proceedings only to claim later that she repeatedly found it necessary during the time leading up to her plea to apprise plea counsel on relevant decisional

law and procedures. N.T. 10/26/17, at 44. Viewing this contradictory PCRA testimony in light of both Appellant's plea colloquy—in which she presents as alert, responsive, communicative, and consistent in her narrative—and plea counsel's PCRA testimony describing the process by which Appellant voluntarily decided to plead guilty, the PCRA court rejected the notion that mental incompetence tainted Appellant's guilty plea. As we agree there is no arguable merit to Appellant's claim of incompetence, we discern no error or abuse of discretion in the PCRA court's decision.

Next, Appellant alleges plea counsel ineffectively induced her to enter an unintelligent plea, as her mental incompetence caused by her refusal to take prescribed psychiatric medications was abundantly clear. In order to establish eligibility for PCRA relief, a petitioner must prove by a preponderance of the evidence that the conviction resulted from "[i]neffective assistance of counsel, which in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "[C]ounsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." Commonwealth v. Brown, __ A.3d __, 2018 WL 5046812, at *12 (Pa. filed Oct. 17, 2018).

The PCRA will provide relief to an appellant if ineffective assistance of counsel caused him or her to enter an involuntary plea of guilt. Commonwealth v. Lynch, 820 A.2d 728 (Pa.Super. 2003). We conduct our review of such a claim in accordance with 42 Pa.C.S. § 9543(a)(2)(ii). Lynch,

820 A.2d at 732. "The voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Id. at 733 (quoting Commonwealth v. Hickman, 799 A.2d 136 (Pa.Super. 2002)).

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. Commonwealth v. Johnson, 179 A.3d 1105, 1114 (Pa.Super. 2018) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." Commonwealth v. Daniels, 963 A.2d 409, 419 (Pa. 2009).

Appellant's charge of counsel's ineffective inducement of her plea centers on her claimed mental incompetence at the time. Because we have rejected Appellant's underlying claim of mental incompetence as meritless, she many not prevail on her ineffectiveness claim.

In Appellant's final issue, she contends the PCRA court erred in denying her request to present the testimony of a psychiatrist regarding Appellant's mental status at the time she entered her guilty plea. The admissibility of evidence is vested in the sound discretion of the hearing court and an appellate court may reverse only where there is an abuse of that discretion.

- 13 -

Commonwealth v. Henry, 706 A.2d 313, 319 (Pa. 1997). An abuse of discretion not found based on mere error of judgment, but rather where ruling is manifestly unreasonable or result of partiality, prejudice, bias, or ill-will. Commonwealth v. Treiber, 121 A.3d 435, 476 (Pa. 2015).

Here, the record shows Appellant mischaracterizes the PCRA court's pre-hearing order. The court did not preclude the possibility of considering the psychiatrist's opinion, it only declared it premature to permit the opinion on Appellant's competence at the time of her plea. In that vein, the court "reserve[ed] the right after hearing from other witnesses and argument to determine whether an additional hearing date is required to allow the petitioner to present a psychiatrist." Order, 11/30/15, at 1. The court then placed the onus upon Appellant to resubmit her request for the admission of such expert opinion:

> Again the court does not hold that it will not permit the psychiatrist to testify, but rather the reports that have been authored and are in the file do not appear to provide an appropriate foundation in light of the new information and, therefore, the court directs that the psychiatrist may not testify at the time of the original PCRA hearing and that in the event that counsel for the petitioner believes thereafter that psychiatric testimony is appropriate, that the reports upon which he is relying to suggest that that testimony is admissible be provided to the Commonwealth and the court in advance so that appropriate determinations can be made as to whether there are issues to be addressed on these questions.

Id. at 2 (emphasis added).

It appears that Appellant never availed herself of the court's invitation to petition the court after the PCRA hearing if she still believed it appropriate to admit the psychiatrist's opinion testimony concerning her competence at the plea hearing. Accordingly, we discern no factual basis to her claim that the PCRA court precluded her from introducing the psychiatrist's opinion.

For the foregoing reasons, as well as for the reasons expressed in the cogent and comprehensive opinion of the Honorable Mark D. Stevens, see PCRA Court Opinion, 5/7/18, at 1-11, [1] which we adopt as our own, we affirm the PCRA order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018

_____

[1] The parties shall attach a copy of the PCRA court's February 12, 2018, opinion to this memorandum in the event of further proceedings.

IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

          vs.

ASHLEY MARIE BARBER
Defendant.

No. CR 573-2012

2018 MAY -7 AM 10: 50

CLERK OF COURTS
CRAWFORD COUNTY, PA

I CERTIFY THIS TO BE A TRUE COPY OF ORIGINAL
ON FILE IN THE CLERK OF COURTS OFFICE

CLERK OF COURTS, CRAWFORD COUNTY, PA

MY COMMISSION EXPIRES
FIRST MONDAY JANUARY 2022

## MEMORANDUM AND ORDER

Mark D. Stevens, J.                                                                                          May 7, 2018

Before the Court is the Defendant's Amended Petition for Post Conviction Collateral Relief. Defendant/Petitioner pled guilty, along with her co-defendant Jade Olmstead, to the first degree murder of Brandy Stevens.

To put the matter in context, the following is a summary of the facts Petitioner admitted in her plea colloquy. Petitioner admitted that Olmstead and Petitioner had a plan to lure Stevens into the woods to fight her. (N.T. Plea Colloquy, p. 125.) After the physical altercation began, the plan became to kill her. (N.T. Plea Colloquy, p. 127.) The fight started with Petitioner hitting Stevens in the face and throat with her fists and hands. (N.T. Plea Colloquy, p. 129.) Stevens began fighting back and screaming for help. (N.T. Plea Colloquy, p. 130.) Petitioner held Stevens while Olmstead struck her multiple times in the head with a shovel. (N.T. Plea Colloquy, p. 133.) Petitioner beat Stevens' forehead off a tree stump until she could see visible blood and brain material. (N.T. Plea Colloquy, p. 133-134.) Petitioner used a rope that had been on the tree stump to first hold and then to strangle Stevens. (N.T. Plea Colloquy, p. 137.) When Stevens stopped fighting back, Petitioner stated that her "anger wasn't done" and it was frustrating to her that Stevens was no longer fighting so Petitioner dropped a boulder from over her head onto Stevens' face. (N.T. Plea Colloquy, p. 143-144.) Petitioner then poured water into Steven's mouth to drown her. (N.T. Plea Colloquy, p. 146; 160.) Petitioner and Olmstead put Stevens in a shallow grave they dug in the ground and covered her face and body with dirt. (N.T. Plea Colloquy, p. 148.)

Petitioner was sentenced to a term of life imprisonment after her guilty plea on November 14, 2013. Petitioner filed a pro se Motion for Post Conviction Collateral Relief on November 5, 2014. Petitioner was appointed PCRA counsel and counsel filed an Amended Petition for Post Conviction Collateral Relief on February 20, 2015. The Court heard argument

on the Amended Petition on May 4, 2015 and an evidentiary hearing was held on October 26, 2017. The Court ordered briefs to be filed within 45 days. Upon motion of the Petitioner, the Court extended the time for filing, and both the Commonwealth's and the Petitioner's briefs were timely submitted by January 11, 2018.

Petitioner asserts essentially two reasons for relief under the Post Conviction Collateral Relief Act: 1) that her guilty plea was unlawfully induced and thus not knowing, voluntary, and intelligent; and 2) ineffective assistance of trial counsel.

The two issues dovetail as Pennsylvania law sets forth that a criminal defendant has the right to effective assistance of counsel during a plea process as well as during trial. *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa.Super.2002). Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea. *Commonwealth v. Flood*, 627 A.2d 1193 (Pa. Super. 1993). A guilty plea will be deemed valid if the totality of the circumstances surrounding the plea shows that the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. *Commonwealth v. Martinez*, 453 A.2d 940 (Pa. 1982); *Commonwealth v. Fluharty*, 632 A.2d 312, 314–15 (Pa.Super. 1993). Pennsylvania law does not require the defendant to "be pleased with the outcome of his decision to enter a plea of guilty; all that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made." *Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa.Super. 2007). Pennsylvania law presumes the defendant is aware of what he is doing when he enters a guilty plea, and the defendant bears the burden to prove otherwise. *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa.Super. 2003).

To evaluate the issues raised in Petitioner Barber's PCRA, we undertake a totality assessment of the knowing, voluntary, and intelligent character of the plea. Our totality assessment examines the statements and the understanding of the Petitioner during the Court's lengthy guilty plea colloquy held on November 14, 2013 wherein the Court engaged in an extensive dialogue with meaningful participation by the Petitioner throughout.

To support her contention that her plea was not voluntary, Petitioner points to her past mental health treatment and history of drug and alcohol abuse. Petitioner cites her testimony at the PCRA hearing on October 26, 2017 wherein she testified that she refused medications and had psychological difficulties at the Crawford County Correctional Facility immediately prior to entering her guilty plea. (See Brief in Support of PCRA Petition, p. 4.) Petitioner's Brief specifically cites PCRA testimony where she testified she was not taking her prescribed medication leading up to the date of her guilty plea because she thought she did not need it anymore. (N.T. PCRA Hearing p. 39-42.) She also cites that portion of her testimony reflecting that her mental state in the few weeks leading up to the entry of her guilty plea "had been fine for a long time" but that when her co-defendant, Jade Olmstead, came back to Crawford County from somewhere else, it detrimentally affected her mental state and "everything fell apart again."

2

(N.T. PCRA Hearing p.41.) Petitioner argues she was not capable of comprehending what was going on at the time of her plea and she and no legal knowledge or ability to understand what was going on in the two years preceding the plea. (N.T. PCRA Hearing p. 44.) Petitioner maintains she was misled by Robert Draudt, her trial counsel, because he led her to believe that she should "give up" and that "no matter what I had done, no matter what way we went with the case, either way, that was it." (N. T. PCRA Hearing p. 43; 45.) Although stopping short of testifying that she communicated to her attorney that she would not or did not want to enter the plea, Petitioner argues she indicated to her attorney that she wanted to "go other directions" meaning "other defenses." (N. T. PCRA Hearing p.45.)

The Court was surprised by Petitioner's testimony at the PCRA Hearing because she so drastically changed her testimony and directly contradicted the clear and unequivocal statements she made at her guilty plea colloquy on November 14, 2013.

Petitioner's testimony at the guilty plea colloquy on November 14, 2013 evidenced her clear understanding of the plea and of the process. Petitioner was questioned about her mental health history and her current mental state and medications. She testified she was taking her medication in the dosage and manner that the doctors prescribed it. (N. T. Plea Colloquy, p.12.) The Court specifically asked her if she was cheeking or spitting out her medication and she testified that she was not. (N. T. Plea Colloquy, p. 12.) She testified that she was regularly taking her prescribed medication and it was helping her and not affecting her ability to understand the Court. (N. T. Plea Colloquy, p.12-13.) She indicated she was not under the influence of alcohol or controlled substances other than her prescribed medications and no substances were impacting her ability to understand the Court. (N. T. Plea Colloquy, p. 13.) She indicated that despite having had mental health treatment and taking medication to help her with certain issues, she was comfortable going through the guilty plea proceeding from a mental health perspective and she understood the conversations with her attorney and with the Court. (N. T. Plea Colloquy, p.14.) When asked if she believed she was competent, she indicated that she believed she was competent and she understood what the Court was explaining. (N. T. Plea Colloquy, p. 16.)

When the Court pressed her on this and asked her to further specify her understanding of the process, her answers were as follows:

THE COURT: You understand all the things we've talked about?

MS. BARBER: Yes.

THE COURT: You understood your defenses, the rights you have to proceed at trial; you understand Mr. Draudt's role; you understand Mr. Schultz's role; you understand my role; the various staff's roles. Do you understand all of those things?

3

MS. BARBER:          Yes.

THE COURT:          And do you believe you have been able to assist Mr. Draudt in his representation of you over the nine months that have been leading up to today?

MS. BARBER:          Ninety percent of the time, yes.

(N. T. Plea Colloquy, p. 17.)

Petitioner's answer shows her ability to quantify and describe her level of understanding when she entered her plea. The stated "ninety percent rate" of understanding and assistance is not only evidence of the Petitioner's belief that she comprehended the legal process to a high degree, but her language is also evidence of her ability to precisely and easily communicate her state of mind to the Court on the day she entered her plea.

At another point in the colloquy, after the Court explained the different elements necessary for the different types of murder and the defenses thereto, the Petitioner again showed her close attention to the procedure and her detailed understanding as follows:

THE COURT:          The defendant is alleged, you're the defendant here, you're alleged to have on or about May 24, 2012 with malice, premeditation with specific intent to kill, kill Brandy Stevens. Do you understand that?

MS. BARBER:          No, it was on May 17.

THE COURT:          Okay. You're right. It was on May 17.

MR. SCHULTZ:          The information says May –

THE COURT:          The information says May – well, you know what, I have two informations. It got corrected. It did. There was an amended information. So I've got two of them. I grabbed the wrong one. It's May 17. Thank you for that clarification. And that's the rule of thumb. If that happens, I say something that's not true, just like that, tell me it's wrong. We'll deal will (sic) it. We'll fix it. Okay?

MS. BARBER:          Yes.

(N.T. Plea Colloquy, p. 113.)

4

Then, even later in the colloquy, after being advised that she would no longer be able to raise the issues she raised in her Omnibus Pretrial Motion or shift blame in other directions, Petitioner responded that, "It was nobody else's fault." (N.T. Plea Colloquy, p. 160.)

These are three specific examples of the conversational, detail-oriented statements made by Petitioner that demonstrated she was paying close attention and participatory. She exhibited both the ability and the desire to communicate her understanding to the Court. She was able to correct the Court when necessary and demonstrated she was thinking critically during the process. While Petitioner may have also given many "yes or no" answers during the colloquy, reading the transcript of the colloquy in its entirety, it is evident that the Petitioner was appropriately engaged, actively conversational, and sufficiently demonstrated she understood what she was doing.

Petitioner's PCRA testimony also contradicts her trial counsel's testimony, who testified at the PCRA hearing. Petitioner's trial counsel, Robert Draudt, testified that he believed his client was competent to stand trial, believed she was capable of asking him questions about her case, believed she was capable of giving him intelligent answers, and believed she was capable of communicating with him during the process. (N.T. PRCA Hearing, p. 22-23.) Regarding her mental health, Draudt observed that his client's mental health was stabilized, but at the time of the plea he believed she was competent to enter the guilty plea. (N.T. PCRA Hearing, p. 29; 31.)

Draudt further testified he never told Petitioner to "give up" but rather that he believed co-defendant Jade Olmstead's plea actually helped Petitioner's case because Ms. Olmstead's pleading guilty made it more difficult for Olmstead to blame everything on the Petitioner. (N.T. PCRA Hearing, p. 14; 24-25; 28.) Rather than talking her into the plea, Draudt testified that it was the Petitioner who first mentioned wanting to take a plea. (N.T. PCRA Hearing, p. 27.) Further, Draudt testified it was the Petitioner's position that she did not want to put her family through a trial, and this sentiment did not come from him but rather from the Petitioner herself. (N.T. PCRA Hearing, p. 27.)

Regarding whether Petitioner was taking her prescribed medication at the time she entered her plea, Petitioner's PCRA testimony also contradicted the testimony of Dawn Salsberry, the Health Service Administrator at the Crawford County Correctional Facility where Petitioner was receiving her medications. Ms. Salsberry testified that she administered medications to inmates and kept the records relating to inmate medication. Ms. Salsberry testified that, except for two morning doses and one absence, she had record of Petitioner consistently taking her medication during the time frame leading up to entry of Petitioner's guilty plea. (N.T. PCRA Hearing, p. 72-74; 76-78.)

Part of the totality assessment is the observation of Petitioner's conversational courtroom demeanor during the guilty plea colloquy, the non-pressured nature of the dialogue

5

between Petitioner and the Court, the opportunities given to Petitioner to inquire or take breaks throughout the process, and the slow and purposefully careful explanations given to Petitioner (both by the Court and by counsel) prior to entry of her guilty plea. Nothing about Petitioner's demeanor at the colloquy indicated Petitioner was under undue stress or was having a hard time coping with the proceeding. The Court has no recollection of Petitioner banging her head on counsel table and notes this is an action that the Court would have noted and placed of record. To the contrary, throughout the colloquy, the Petitioner appeared calm and the Court would periodically check with the Petitioner to evaluate her understanding and level of comfort with the process. (See e.g. N.T. Plea Colloquy, p. 113.)

The Court notes Petitioner watched a video explaining the plea process and her plea rights in preparation for her plea while she was at the correctional facility. She then filled out a written plea colloquy in her own handwriting and they went over that written plea colloquy and the PSI with her attorney. (N.T. PCRA Hearing p. 8-10.) Thus, Petitioner received three very detailed explanations about the plea process in three different ways through the video, the written plea colloquy, and the extensive oral colloquy with the Court.

Petitioner's observable understanding of the process interrelates with the Court's finding that Petitioner was taking her medication and not suffering from a mental health issue at the time she entered her plea. Factually, based upon the testimony of Attorney Draudt, the testimony of jail representative Dawn Salsberry, and observations of the Petitioner's demeanor and participation, we find Petitioner was taking her medication and was stable and competent. There is nothing in the record to suggest that Petitioner suddenly mentally decompensated when her co-defendant returned to Crawford County. In fact, Attorney Draudt indicated to the contrary when he credibly testified that Petitioner's mental health was "stabilized." Thus, there was simply no valid mental health issue at the time Petitioner entered her plea.

Considering the totality of Petitioner's presumptively truthful answers at the plea colloquy, her involvement in the process, the Court's explanations to her, and the testimony of her trial counsel and the jail representative, and the complete lack of any valid mental health issue, Petitioner's argument that her guilty plea was not knowing, voluntary, and intelligent is undermined and the Court finds the Petitioner's plea was voluntary. Petitioner's less-than-credible testimony at the PCRA hearing is insufficient to merit relief and the Court therefore denies relief based upon Petitioner's first PCRA claim.

Although not part of our totality analysis, we note that a defendant who pleads guilty is bound by the statements he makes while under oath, and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy. *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003). It is a longstanding rule in Pennsylvania that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. *Pollard*, 832 A.2d at 523 (citing *Commonwealth v. Cappelli*, 489 A.2d 813 (Pa. Super. 1985)). A person who elects to plead

6

guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy. *Id.* (citing *Commonwealth v. Stork*, 737 A.2d 789, 790-91 (Pa. Super. 1999)).

Given this rule, the Court clarifies its position that further testimony from defense expert Dr. Christine Martone was not necessary. In advance of the PCRA evidentiary hearing the Court made a determination that before it would permit an expert to be retained for evaluation purposes or be called as a witness on the question of Petitioner's competency at the time she entered her plea, it would be appropriate to hear testimony from the Petitioner herself as well as counsel and other witnesses. Foundationally, the Court considered what was necessary to determine whether there was a colorable issue regarding her mental health status at the relevant time surrounding her plea.

After hearing from the Defendant/Petitioner and counsel and after weighing the credibility of the various witnesses and reviewing in detail the Petitioner's answers under oath at the colloquy and her interaction with the Court, the Court is satisfied that, based upon the entire record, there is no colorable issue as to competency. Petitioner's answers to the various questions about her competency, mental health medications, mental health treatment, and, frankly, mental health defenses coupled with her answers on the written plea colloquy all lead to the clear and inescapable conclusion that she was competent at the time she entered her plea. Even if the analysis were based exclusively upon the Defendant's testimony at the time of the PCRA Hearing where she was clearly competent and understood what was going on, she nonetheless still failed to provide a credible foundation to contradict the testimony at the colloquy and the Court's own observations of her interactions at the time of the plea. The factual inconsistency between her own testimony at the colloquy and the PCRA Hearing make is such that the Court is satisfied that the record supports unequivocally the conclusion that she was competent and understood the nature of the plea she was entering.

Next we consider Petitioner's argument that her trial counsel was ineffective. Petitioner argues that her trial counsel, Robert Draudt, did not have the appropriate experience and qualifications to counsel her in connection with her guilty plea.

When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) petitioner was prejudiced by counsel's action or omission. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.' "*Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012). The burden of proving ineffectiveness rests with the appellant. *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007). Additionally, we note that counsel cannot be held ineffective for failing to pursue a meritless claim. *Commonwealth v. Hall*, 867 A.2d 619, 632 (Pa.Super. 2005), *appeal denied*, 895 A.2d 549 (Pa. 2006).

7

Petitioner's asserts a general dissatisfaction with her attorney, maintaining he "did not have the appropriate experience and qualifications necessary to adequately counsel the Petitioner in connection with her guilty plea, particularly given the evidence of the Petitioner's mental status." (Amended PCRA Petition, p. 3. Paragraph 10(d).) Petitioner also argues her attorney failed to fully explain the nature and consequences of the Motion for Change of Venue or Venire (Amended PCRA Petition, p. 3. Paragraph 10(b)).

The Petitioner's brief cites to portions of her PCRA testimony wherein the Petitioner described her knowledge of the law and her belief that she understood her own case better than her trial counsel. (N.T. PCRA Hearing, p. 45-50.) She references looking through cases and exploring defenses in the law books provided by Crawford County. She mentions consultations with a friend of hers who is an attorney and complains that her attorney was not aware of or qualified for her defense. (N.T. PCRA Hearing, p. 47.) Petitioner points to various other perceived failures of her trial counsel, ranging from allegations of his alleged failure to provide her with discovery to his showing her a paper that somehow led her to believe the death penalty was still a possibility. (N.T. PCRA Hearing, p. 47-50.)

Once again, Petitioner's testimony is contradicted by both her own testimony at her plea colloquy and the testimony of her trial counsel at the PCRA Hearing. We also note, before we describe the contradictory parts of her testimony regarding her relationship with Mr. Draudt, that Petitioner's two PCRA arguments are logically inconsistent. In her first PCRA argument, Petitioner contends she was not of sound mind, did not understand the process, and was suffering from a mental health condition that precluded her from understanding and entering a knowing and voluntary plea. In her second argument, Petitioner portrays herself as a legal strategist who knew more than her own attorney. She recounts that she researched the law and consulted with an attorney friend to arrive at the best approach for her case. We note that she even participated in legal discussion regarding case law when the Court cited a case that Petitioner stated she had read and understood. (See N.T. Plea Colloquy, p. 19.)

Petitioner's inconsistent arguments further undermine her credibility at the PCRA Hearing and bolster our confidence in Petitioner's competency. Petitioner entered not just a knowing and voluntary plea, but also an intelligent one. Our observation of her understanding of the legal process, her communications regarding the case law, and her active and involved participation in her defense made it clear that this Petitioner understood the process and her situation. She acted involved and capable in her communications to the Court and to her attorney at the time she entered the plea. Looking at a totality of the circumstances, her attorney's effectiveness is not an issue.

At the guilty plea colloquy, Petitioner not only stated she was satisfied with her attorney and his representation (N.T. Plea Colloquy, p. 163), she also visibly demonstrated her working relationship with Attorney Draudt through her communications and breaks to consult with her attorney regarding parts of the colloquy. (See e.g. N.T. Plea Colloquy, p. 28.) Further, she

8

answered in the affirmative when asked if Attorney Draudt did everything she wanted him to do, provided her with discovery, and was available to speak with her whenever she wanted. (N.T. Plea Colloquy, p. 163.)

Evaluating the record in our assessment of Attorney Draudt's performance, we note that Attorney Draudt evidenced his ability to represent the Petitioner in the following particulars: a) he appeared on behalf of Petitioner at pretrial proceedings and filed and effectively argued an Omnibus Pretrial Motion in an attempt to suppress her confession and the initial stop of Petitioner and also filed motions relating to discovery and extensions of time (N.T. PCRA Hearing p. 6; 21-23); b) he filed a Motion for Change of Venue/Venire in an attempt to move the proceedings to a different county to avoid pretrial publicity (N.T. PCRA Hearing p. 13; 18); c) he filed a competency motion and had his client evaluated by a psychiatrist and reviewed the doctor's report with Petitioner before effectively representing Petitioner at her competency hearing (N.T. PCRA Hearing p. 7-9); d) he provided his client with discovery and spoke with her regularly, even frequently, about the evidence against her (N.T. PCRA Hearing p. 20-21); e) he met with Petitioner numerous times at the Crawford County Correctional Facility [approximately 40 times] to discuss Petitioner's case (N.T. PCRA Hearing p. 19); f) he conferred with other attorneys regarding Petitioner's case (including an attorney friend of Petitioner's at Petitioner's request) (N.T. PCRA Hearing p. 6); g) he met with Petitioner's family to discuss the case (N.T. PCRA Hearing p. 21; 15); and f) he explained the available defenses and/or trial strategies and their possible outcomes to Petitioner. (N.T. PCRA Hearing p. 12-13.)

Petitioner confirmed many of the above details. During the plea colloquy, Petitioner confirmed she was able to communicate with Attorney Draudt to assist him in his representation and that he had been to the jail numerous times to discuss her case with her (N.T. Plea Colloquy, p. 16; 20). She confirmed that they spent a lot of time talking about her case. (N.T. Plea Colloquy, p. 32.) She said she had a sufficient amount of time to talk to Draudt about her case. (N.T. Plea Colloquy, p. 114; 163). She spoke with Draudt about giving up her right to appeal the pretrial rulings. (N.T. Plea Colloquy, p. 163.) She confirmed that he explained all of her post sentence rights and thoroughly went over the written plea colloquy with her. (N.T. Plea Colloquy, p. 72-72; 9.) She explained how she discussed the relevant case law with Attorney Draudt. (N.T. Plea Colloquy, p. 20.) She said she was satisfied with his representation and that he had done everything she had asked him to do. (N.T. Plea Colloquy, p. 163.) She acknowledged that Draudt was available to speak with her whenever she wanted, that he answered her questions and provided her with discovery. (N.T. Plea Colloquy, p. 163.)

Also, at the PCRA Hearing, Petitioner confirmed that she had discussed all of her mental health issues and their implications with Attorney Draudt (N.T. PCRA Hearing, p. 36.) and she confirmed that they also discussed details of her case like the timing of sentencing (N.T. PCRA Hearing, p. 44), the Omnibus Pretrial Motion (N.T. PCRA Hearing, p. 61), and the implications of being examined by Dr. Martone (N.T. PCRA Hearing, p. 61). Further, she

9

specifically admitted that she never complained about Attorney Draudt's representation. (N.T. PCRA Hearing, p. 61.)

Considering the above listing of Attorney Draudt's actions in his representation of Petitioner and the confirmation of those actions by Petitioner, we find Attorney Draudt acted with sufficient effort and experience throughout the pretrial stages and up through the time of the plea colloquy to satisfy the Court that he effectively represented the Petitioner and had a reasonable basis for the above-listed conduct in his representation of Petitioner.

The Court also notes, in light of Petitioner's testimony at the PCRA Hearing, that the death penalty was never part of this case. We find Attorney Draudt's testimony credible (N.T. PCRA Hearing p. 28) and further note that Attorney Draudt is not death qualified and would not have been appointed by the Court to represent this Petitioner if the death penalty were in any way at issue. Any implication by Petitioner that the issue of the death penalty somehow impacted her representation or her ability to understand her plea is without merit and inconsistent with all credible evidence of record.

The same can be said about Petitioner's complaint that she did not understand the impact of being sentenced directly after entering her guilty plea, which we also find not credible. The issue was clearly raised and carefully explained by the Court at the plea colloquy, and Petitioner testified she understood the impact of the timing of sentencing (N.T. Guilty Plea Colloquy, p. 164-165.)

With regard to Petitioner's statement at the PCRA Hearing that she wanted to pursue "other defenses," to complete our PCRA analysis and meet the test for effectiveness set forth in the case law, we next evaluate whether the legal decision to take the plea rather than moving forward to trial on any available defense resulted in prejudice to Petitioner and whether a different approach would have changed the result of the proceeding.

In Petitioner's Brief in Support of her PCRA Petition, she excerpts portions of her PCRA testimony describing Petitioner's research in law books and how she would bring defenses to her attorney's attention after talking with her attorney friend. According to Petitioner, Attorney Draudt would not have known about these defenses if it were not for her. Although we do not find this statement credible in light of the testimony of Attorney Draudt, even assuming *arguendo* that Attorney Draudt only became aware of the need to find a competency expert to examine the Defendant after communicating with his client, this would not have changed the outcome. Competency was questioned. An expert was retained. Two psychiatric reports were prepared and submitted to the Court. The Court held a hearing on competency and found Petitioner to be competent. Then Petitioner made a knowing, voluntary, and intelligent decision to enter a guilty plea after full consultation with her counsel.

The Court finds Attorney Draudt credible and finds that he did not encourage or compel his client to enter a plea but rather felt that the case had improved. He was prepared or at least

10

notably prepared for and ready for trial. It was the Petitioner, for her own reasons, that indicated a desire to enter a plea and conveyed same to counsel. Those issues were explored in detail throughout the colloquy.

Attorney Draudt had developed and was prepared to present any available applicable defense at trial. From a trial perspective, Attorney Draudt was glad that Petitioner's co-defendant entered a guilty plea "because that removed any impetus for her to, you know, cast blame on my client." (N.T. PCRA Hearing, p. 11.) He also believed that Petitioner's co-defendant's plea removed the possibility of the Commonwealth using Olmstead as a witness and this was good for Petitioner's case. (N.T. PCRA Hearing, p. 24-25.) Then, despite Attorney Draudt's efforts to move the case forward to trial, it was the *Petitioner* who brought up her desire to enter a guilty plea and it was the *Petitioner* who decided that she did not want to go trial because she did not want to put her family through a trial. (See N.T. PCRA Hearing, p. 27.) Therefore, to the extent that Petitioner believed that any defenses had merit, for Petitioner to suggest somehow that it was her counsel who encouraged her to abandon those defenses is contrary to the facts.

To summarize, the suggestion that somehow her decision to enter the plea was based upon counsel's unpreparedness or lack of understanding of the law is simply inconsistent with the factual testimony at the time of the entry of the plea and sentencing and the credible testimony from the PCRA Hearing. There are no credible facts of record that lead to the conclusion that the Defendant was compelled to enter a plea. Rather, her decision was knowingly, voluntarily, and intelligently made after consulting with counsel and her family after thoroughly going over the case in detail and considering available defenses. The Court combines this observation with the equally compelling fact that the details of the actual incident conveyed by Petitioner meet the elements of first degree murder without presenting a viable defense. To the extent that there would be other defenses that did not involve the actual conduct but focus on the Petitioner's state of mind, once again, her answers at the time of the colloquy and her exchanges with the Court under oath eliminate those issues from further reasonable consideration.

The fact that now in retrospect Petitioner believes her choice to enter a plea was wrong or not a good conclusion on her part does not lead to the conclusion that it was a result of counsel's error, lack of explanation, or lack of preparedness or effectiveness. In contrast, the credible testimony of Attorney Draudt points to the conclusion that counsel was not the moving force behind the plea, nor was it his desire that the Defendant enter a plea, and a factual foundation for first degree murder was well established at the time of the plea.

Because we find a totality of the circumstances shows Petitioner entered a knowing, voluntary, and intelligent guilty plea that was not compelled, forced, or even minimally caused by any action or inaction of Attorney Draudt whose representation was sufficiently effective, Petitioner's PCRA is without merit.

ACCORDINGLY, we enter the following ORDER:

## ORDER

Mark D. Stevens, J.                                           May 7, 2018

     AND NOW, this _____ day of May 2018, it is hereby ORDERED that Petitioner's

Amended Petition for Post Conviction Collateral Relief is hereby DENIED.


BY THE COURT:


_____ J.

13